## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| MARLON J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-182 |
| | ) | |
| MSC SHIP MANAGEMENT, LTD., | ) | |
| MSC MEDITERRANEAN | ) | |
| SHIPPING CO., and | ) | |
| MERIDIAN 7 LTD, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants MSC Ship Management, LTD., MSC Mediterranean Shipping Co., and Meridian 7, LTD (collectively "Defendants") move to exclude the testimony of Plaintiff's expert witnesses Joseph Crosson, doc. 29, and Katharine Sweeney, doc. 30. Plaintiff has responded, docs. 40 & 41, Defendants have replied, docs. 46 & 47, and Plaintiff has sur-replied, docs. 57 & 58. Meanwhile, Plaintiff seeks to exclude the testimony of Defendants' expert witness Marc. A. Fazioli. Doc. 32. Defendants have responded. Doc. 39. These motions have been referred to the undersigned and are ripe for review.

1

## Background

This case involves a slip and fall that occurred while Plaintiff, a longshoreman, was descending a gangway to disembark the *M/V MSC Gayane*.  Doc. 1-1 at 3-4.  Plaintiff alleges his fall was caused by two distinct hazards: "worn tread on the lower steps and an improperly rigged lower handrail."  Doc. 32 at 2; *see also* doc. 1-1 at 3-4.  He brought negligence-based claims under § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), arguing that Defendants' negligence gave rise to the safety hazards that caused Plaintiff's accident and resulting injury.  *See generally* doc. 1-1.  Plaintiff has retained two expert witnesses to support his allegations, Joseph Crosson and Katharine Sweeney.  Defendants retained Marc Fazioli to bolster their defense.  Against that backdrop, the Court considers the challenges to the parties' experts.

## Legal Standard

Federal Rule of Evidence 702 compels the Court to act as a "gatekeeper" for expert evidence.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509

U.S. 579, 589 n. 7, 597 (1993)). In performing this task, the Court must

consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems.,*

*Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).  The proponent of the expert

opinion bears the burden of establishing qualification, reliability, and

helpfulness by a preponderance of the evidence.  *Allison v. McGhan Med.*

*Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at

592 n. 10).

Under the first prong, "experts may be qualified in various ways.

While scientific training or education may provide possible means to

qualify, experience in a field may offer another path to expert status."

*Frazier*, 387 F.3d at 1260-61; *see also* Fed. R. Evid. 702 (a witness may

be qualified as an expert by "knowledge, skill, experience, training, or

education[.]").  In determining qualification, courts generally look to a

proposed expert's education and experience and ask whether the

witness's intended testimony is sufficiently within his or her area of expertise.  *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). However, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original).

Consequently, reliability, the second prong, "remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261.  "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).  These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387

4

F.3d at 1262.  The Court, therefore, has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Id.*  (internal quotation and citations omitted).  "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *Id.* at 1261 (emphasis in original).

Lastly, expert testimony must assist the trier of fact.  *Frazier*, 387 F.3d at 1262.  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."  *Id.* (citation omitted).  This inquiry is commonly called the "helpfulness" inquiry.  *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Id.* (quoting *Daubert*, 509 U.S. at 591).  Expert testimony does not help the trier of fact if it fails to "fit" with the facts of the case.  *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004); *see also FP Augusta II, LLC*

*v. Core Constr. Servs., LLC*, 2022 WL 626783, at *4 (S.D. Ga. Mar. 3, 2022) (quoting *Korsing v. United States*, 2017 WL 7794276, at *3 (S.D. Fla. Aug. 24, 2011)) ("Under [the helpfulness] requirement, which is concerned primarily with relevance, the Court must consider whether the expert testimony 'is sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute.' ").

<u>Analysis</u>

## I.    Joseph P. Crosson

Joseph Crosson is an engineer specializing in "metallurgical and weld related structural failures, mechanical failures, heat exchanger problems, stress analysis, marine casualty investigations, wire rope failures, power plant associated failures, turbine failures, material testing, container crane failures, and examination of container crane weldments."    Doc. 29-6 at 22.    Crosson was hired to "determine the general condition of the subject gangway with respect to construction and any evident deterioration."    *Id*. at 3.    Crosson's first report is dated April 9, 2024, *id*. at 2, and was disclosed on May 13, 2024, *id*. at 1.    It identified three opinions that support the contention that "on the day of the incident

the condition of the subject gangway represented an unsafe working environment":

a. The treads on the lower five steps of the gangway exhibited a degree of wear which was inconsistent with the level of wear on the upper portion. Some degree of paint blistering and rust stains were also evident on the lower section steel step treads – indications of disrepair;

b. The treads on the steps of the upper gangway section would offer greater slip resistance as compared to the treads on the lower steps; and

c. The lower five steps of the gangway did not have a handrail on either side of the gangway.[1]

*Id.* at 5-6. After reviewing a report from Defendants' expert, Crosson altered Opinion (c) to the following: "The lower three steps of the gangway did not have a handrail on either side of the gangway." Doc. 29-7 at 4. Crosson's other conclusions did not change. *See generally id.*

Defendants challenge each of Crosson's three opinions on methodological grounds. Doc. 29 at 12. Defendants also assert that Crosson's opinion "regarding the handrail" is unhelpful to the jury. *Id.* They attack his observations about "rust or wear" as unhelpful, irrelevant, and unduly prejudicial. *Id.* at 16-19. Finally, they refer to his

---

[1] For clarity, the Court has added its own lettering convention to these opinions and will, throughout this section of this Order, refer to each of the three opinions as labeled: Opinion (a), Opinion (b), and Opinion (c).

qualifications to offer Opinion (b) as "murky" and state that "he is not qualified to testify about slip resistance specifically." *Id.* at 13. The Court construes this as a challenge to Crosson's qualifications to offer Opinion (b).[2] The Court turns first, then, to Crosson's qualifications to offer Opinion (b).

## A. Qualifications

Defendants acknowledge Crosson's experience as a metallurgist and engineer but observe that Crosson's CV "does not disclose any expertise or certification in tribometry, the study of slippage rates and friction coefficients." Doc. 29 at 13. Defendants identify case law suggesting that a certified tribometrist would be qualified to offer opinion testimony about the slip resistance of a walkway surface. *Id.* (citing *Bunting v. D.C. CVS Pharmacy, LLC*, 2024 WL 474159, at *5 (D.D.C. Feb. 7, 2024)). They also state that some courts have "excluded experts attempting to testify about the 'slip resistance of flooring material' in a given area, even those who have certificates that 'appear generally relevant,' when they were 'not a certified Tribometrist.'" *Id.* at 13

---

[2] Plaintiff argues that Crosson is qualified to offer reliable, helpful opinions. Doc. 40 at 8-12. Because Defendant does not challenge Crosson's qualifications to offer his other opinions, the Court agrees with Plaintiff that Crosson is qualified to offer them.

(quoting *Page v. Supervalu, Inc.*, 2015 WL 1439572, at *15 (D. Md. Mar. 26, 2015)).

The Defendants' cited cases, and the experts and testimony involved, are distinguishable from this case and Crosson's proposed testimony.  In each cited case, the challenged expert used physical testing to form the basis of their opinion regarding a flooring material's slip resistance.  *See Page*, 2015 WL 1439572, at *15; *Bunting,* 2024 WL 474159, at *1.  In *Page*, the excluded expert never used the tool he used to formulate his opinion outside of a laboratory before the on-site inspection he performed.  2015 WL 1439572 at *15.  Additionally, the background and experience of the expert in *Page* was rooted in the food industry and supermarket management, not slip resistance.  *Id.* at 16.  In contrast, Crosson is an engineer and metallurgist who did not perform physical testing of the site and does not rely upon physical testing in his reports.  *See generally* docs. 29-6 & 29-7.  The cited cases are, therefore, of limited value.

To the extent that Defendants imply that an expert must be a certified tribometrist in order to testify regarding a surface's relative slip resistance, this argument contains a logical fallacy.  While certain

conditions, such as a certification in tribometry, may be *sufficient* to satisfy Daubert's qualification requirement to testify regarding a walkway's slip resistance, that does not imply that they are *necessary* to satisfy that requirement. *See Lewis v. Carnival Corp.*, 570 F. Supp. 3d 1189, 1193 (S.D. Fla. 2021) ("Although the experts in those cases performed friction testing, the cases do not establish that an expert *must* perform such testing to opine on a defendant's choice of flooring.") (emphasis in original). Crosson's lack of a formal certification, therefore, does not require excluding his opinion.

Nonetheless, Plaintiff bears the burden of establishing his expert witnesses' qualifications. *Allison*, 184 F.3d at 1306. A witness need not be the best or most qualified authority in a field to be admitted as an expert. *See, e.g.*, *United States v. Williams*, 865 F.3d 1328, 1340 (11th Cir. 2017) (finding that, although the expert's qualifications were "imperfect," any defects were "slight enough that the defendants could explore them on cross examination."); *see also Bracey v. Jolley*, 2012 WL 12870257, at *3 (N.D. Ga. Aug. 3, 2012) ("Rule 702 does not require a party to produce the 'most qualified' expert."). Crosson must "only possess enough general knowledge of a subject that his testimony would

likely assist the trier of fact" in understanding the evidence or resolving a factual issue. *Navelski v. Int'l Paper Co.*, 244 F.Supp.3d 1275, 1293 (N.D. Fla. 2017) (internal citation omitted). Given Crosson's extensive training as a metallurgist and engineer, experience working in the maritime industry, and the liberal standard for admission of expert testimony under Rule 702, *see Frazier*, 387 F.3d at 1294, Plaintiff has met his burden of demonstrating that Crosson is qualified to offer Opinion (b). As Plaintiff points out, Defendants' quarrels with Crosson's qualifications are "fodder for cross examination rather than reason to exclude his testimony altogether." *Williams*, 865 F.3d at 1340.

## B. Reliability

Defendants challenge the reliability of Crosson's methodology for all his opinions. Doc. 29 at 12. Defendants attack Opinion (b), "about the gangway treads," because Crosson "failed to employ any methodological rigor in reaching his opinion about the coefficient of friction for the subject gangway treads." Doc. 29 at 16. Specifically, Defendants fault Crosson for not performing any calculations, not taking any other readings, not using any scientific equipment, and "generally engag[ing] in no scientific inquiry of any kind." *Id*. at 15. Defendants argue that

11

Crosson's methodological omissions are particularly grave because there are quantitative methods that could have allowed him to provide reliable testimony. *Id.* at 15, n.6. Defendants rely on *Hampton v. Broadway Mar. Shipping Co.*, 1997 WL 102500, at *4 (N.D. Cal. Feb. 25, 1997), to argue that Crosson's Opinion (b) is unreliable because he performed no quantitative measurement and solely "looked at contemporaneous photographs and years-after-the-fact measurements of the subject gangway steps.". Doc. 29 at 14-15; *see also* doc. 46 at 5-7.

*Hampton* presents distinguishable circumstances from the case at hand. In *Hampton*, the expert opined that the material at issue had "lost any non-skid properties that they may have possessed" despite otherwise stating that he intentionally avoided cases involving slip resistance or slippery surfaces due to his lack of expertise in these matters. 1997 WL 102500, at *4-5. With the context of Crosson's Opinion (a) in mind, Crosson is merely stating in Opinion (b) that steps with less wear will have greater slip resistance than steps with greater exhibited wear. Crosson is speaking qualitatively as to the relative slip resistance of two surfaces, *see* doc. 57 at 5-6, rather than quantitatively asserting that a material had lost any slip resistant qualities. *See* doc. 29-6 at 5-6.

Additionally, an expert's failure to conduct physical testing, such as testing a surface's coefficient of friction, is not absolutely required to reliably testify about that surface's slip resistance. *See Demarzo v. Healthcare Tr. of Am., Inc.*, 565 F. Supp. 3d 1253, 1258 (S.D. Fla. 2021) ("[The expert's] inability to conduct a coefficient of friction test on the asphalt does not automatically render his methodology and opinions unreliable."); *see also Hendrix v. Evenflo Co.,* 255 F.R.D. 568, 586 (N.D. Fla. 2009) ("Physical testing is not an absolute prerequisite to the admission of expert testimony.") (internal citation omitted). "Neither *Daubert* nor *Kumho Tire* requires physical examination where informed and reasonable empirical inferences can be made from photographic evidence and the reliable testimony of others." *Lesser v. Camp Wildwood*, 282 F. Supp. 2d 139, 144 (S.D. N.Y. 2003). Here, Crosson's visual examination and consideration of the "substantial universe of discovery" in forming his conclusions by applying relevant standards gleaned from his years of experience, doc. 40 at 14-15, satisfies Rule 702's reliability prong.

Similarly, Defendants attack Opinions (a) and (c) because Crosson "did not use any methodology in reaching his opinions about alleged rust

and wear on the steps" and "employed no discernable methodology in analyzing where the gangway railings ended, instead merely looking at videos and photographs to eyeball their endpoints."  Doc. 29 at 17 & 20. In response, Plaintiff claims that Crosson's methodology is reliable, that he did not need to personally inspect the vessel or the gangway to render his opinions, and that Defendants can raise any concerns with his methodology through cross-examination.  Doc. 40 at 13-18.  As Plaintiff correctly asserts, *id.* at 16, an expert may reliably premise his opinions on visual inspection and his own experience and expertise.  *See Godelia v. Zoll Servs, LLC,* 2019 WL 3797632 at *3 (S.D. Fla. Aug. 13, 2019) (in approving reliability of opinions based on visual inspection, "[t]o the extent that Defendant argues that [the expert] should have employed a more sophisticated inspection, those questions go to the weight of [the expert's] opinion and not whether his methodology was reliable").  Further, Plaintiff argues that Crosson's methodology goes beyond mere visual inspection.  *Id.* at 14-15.  Instead, "[t]he methodology performed by Crosson involved taking note of specific visual cues from the metallic components and discussing the significance."  *Id.* at 17.  Crosson's visual

inspection, informed by his expertise in metallurgy, is sufficiently reliable to support his opinions.

The weight to be given to admissible expert testimony is a matter for the jury. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd*., 326 F.3d 1333, 1341 (11th Cir. 2003) ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. . . . Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596)); *see also Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 989-90 (11th Cir. 2016) (reversing district court's exclusion of expert testimony as unreliable). Therefore, if Defendants "believe[ ] there are flaws in [Crosson's] generally reliable methodology, that is precisely the role of cross-examination." *Handley v. Werner Enters. Inc.*, 2022 WL 229891, at *3 (M.D. Ga. Jan. 25, 2022) (internal quotation marks and citations omitted).

## C. Helpfulness

Defendants also contend that Crosson's Opinions (a) and (c) should be excluded as unhelpful because: (1) Crosson explicitly testified that any rust on the steps had nothing to do with the subject incident, *id*. at 17-18; (2) Crosson's testimony, even if "marginally relevant," is more prejudicial than probative, *id*. at 18 (citing *Hughes v. Wal-Mart Stores E., LP*, 2023 WL 3204662, at *3 (S.D. Fla. May 2, 2023)); and (3) "[a]n expert may not merely serve as a conduit for what the factfinder itself could see in a photograph," *id*. at 19.

In response, Plaintiff contends that Crosson's education and half century of experience working in engineering and metallurgy provide him with knowledge exceeding that of the average layperson and allow him to understand the condition of the grating in ways a lay juror would not.  Doc. 40 at 19.  Because of this, he asserts that Crosson's testimony will help the jury understand critical issues in the case, as well as "understanding the evidence in context," *id*., relying on authority that "expert testimony is admissible if it will simply assist the trier of fact to understand the facts already in the record, even if all it does is put those

facts in context." *Id*. at 19, n. 7 (quoting *Thomas v. Hubtex Maschinenbau GmbH & Co KG*, 2008 WL 4371977, at *3 (M.D. Ga., Sept. 23, 2008)).

Even if Crosson's discussion of rust and general disrepair in Opinion (a) is potentially marginally relevant, as "context" for the facts in this case, Defendants have shown that the rust on the gangway, by Crosson's own admission, was immaterial to Plaintiff's outcome. Doc. 29 at 20; *see also* doc. 46 at 9-10. Thus, presenting this opinion for the sole purpose of establishing indicia of disrepair impermissibly prejudices Defendants. *See* doc. 29-5 at 19. For this reason, the portion of Crosson's Opinion (a) that "[s]ome degree of paint blistering and rust stains were also evident on the lower section steel step treads—indications of disrepair," is **EXCLUDED** as irrelevant and therefore unhelpful. Doc. 29-6 at 5-6. However, for the reasons discussed above, Crosson may opine on the difference in wear between the lower five steps of the gangway and the upper portion of the gangway as context for his Opinion (b) about the relative slip resistance of the two surfaces.

Defendants challenge Crosson's Opinion (c) as unhelpful by arguing that he is merely restating what is plainly obvious in photographs that a factfinder could evaluate for themselves. Doc. 29 at 21 (citing *Jones v.*

*Beelman Truck Co.*, 2015 WL 3620651 at *7 (E.D. Mo. June 9, 2015)). Plaintiff's response concedes that expert testimony must concern matters "beyond the understanding of the average lay person." Doc. 40 at 19 (citing *Frazier*, 387 F.3d at 1262). Here, there is no indication that Crosson's Opinion (c) reaches such matters. Although Crosson has demonstrated considerable expertise in metallurgy and engineering, it is not clear how that would result in a superior ability to understand or evaluate the location of a handrail's end point. *See Thomas*, 2008 WL 4371977 at *3 ("[E]xpert testimony regarding issues within the understanding and experience of average citizens is properly excluded.") (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Therefore, Crosson's Opinion (c) is **EXCLUDED**.

## II.    Katharine Sweeney

Katharine Sweeney is a master mariner who is currently employed as a marine consultant. Doc. 30-1 at 2. Plaintiff retained her to "provide expert testimony on the applicable custom, practice, and standards of basic seamanship as applied to this incident, and provide context to help explain the evidence so that a person who may not have extensive maritime experience could better understand the evidence, and explain,

how, with appropriate care, this incident should have been prevented."

*Id.* Defendants challenge her qualifications to offer this anticipated testimony, her methodology—or lack thereof—in formulating her opinions, and the helpfulness of some of opinions. *See generally* doc. 30. The Court will address the Defendant's challenges under each prong of the *Daubert* analysis in turn.

### A. Qualifications

Defendants challenge Sweeney's qualifications to offer opinions in each of these particularized areas: gangway design, human factors analysis regarding the handrails and their role in Plaintiff's fall, human factors analysis regarding what a longshoreman would notice and the slip resistance of the gangway and its role in Plaintiff's fall. *See* doc. 30 at 12-24. They point to her lack of experience in several arenas to advance the contention that she is not qualified: (1) Sweeney has never designed a gangway, nor has she manufactured one; (2) Sweeney, despite being a marine consultant, never performed gangway inspections on container ships in that role; (3) Sweeney is not a biomechanical engineer or a human factors expert; (4) Sweeney has no engineering experience

whatsoever; and (5) Sweeney identifies no metallurgical or human-factors publications that are relevant to this case. *Id*. at 6.

Plaintiff responds by asserting that Sweeney's "qualifications and experience match perfectly to the subject matter" for all of the opinions she offers. Doc. 41 at 8. To support this claim, Plaintiff points to Sweeney's extensive professional career working on container vessels, strong academic performance at the California Maritime Academy, and additional training and certifications she has received. *Id*. at 8-9. Because Sweeney's "qualifications must correspond to the subject matter of [her] proffered testimony," *Evanston Ins. Co. v. Xytex Tissue Servs., LLC*, 378 F. Supp. 3d 1267, 1278 (S.D. Ga. 2019), the Court analysis her qualifications for each of the categories of anticipated testimony challenged by Defendants.

### i.    Gangway Design

Defendants assert that several of Sweeney's opinions should be excluded because they represent design critiques that she is not qualified to proffer. Doc. 30 at 12. They challenge her opinions "that it was improper for the gangway's manufacturer to design the upper elements of the gangway out of aluminum and the lower elements out of steel,"

that "all steps must have identical tread patterns," and that "the gangway railing should not 'stop 5 steps from the bottom' . . . [and] should have been designed so it was longer than it was." *Id.* (quoting doc. 30-1 at 4).    Defendants observe that Sweeney has never designed or manufactured a gangway nor been a part of a class society's gangway inspection team.    *Id.*    They argue that this lack of design experience disqualifies Sweeney from being able to opine on gangway design.    *Id.* at 12-13 (citing *Frankum v. Bos. Sci. Corp.*, 2015 WL 1976952, at *14 (S.D.W. Va. May 1, 2015)).

Even when an expert has "extensive experience" using—or even repairing—the instrumentality at issue, that does not qualify them to opine on the design or manufacture of the instrumentality. *Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476-77 (1st Cir. 1997) (master automobile technician, who was expert in automotive repair, could not testify about transmission design defect).    Plaintiff provides no specific argument to support Sweeney's qualifications to provide opinions regarding gangway design. *See generally* docs. 41 & 58.    His recitation of her experience and credentials related to maritime work, generally, without pointing to any experience or expertise in the design or

manufacture of gangways, *see* doc. 41 at 7-9; doc. 58 at 3-4, is insufficient to support Sweeney's qualifications to offer any opinion testimony about any flaws in the design of the gangway. *See generally* docs. 41 & 58. Any testimony from Sweeney critiquing the design of the gangway or opining on how the gangway should have been designed or manufactured is, therefore, **EXCLUDED**.

### ii.    Human Factors Analysis

Defendants challenge Sweeney's qualifications to testify about "what a longshoreman would notice," or that "Plaintiff should or should not have noticed features of the gangway tread pattern," arguing she lacks any human-factors expertise and "opinions about what a person would notice in a given situation are archetypal human-factors opinions." Doc. 30 at 21, 22; *see also* doc. 30-5 at 21 (Sweeney's deposition testimony that "an experienced longshoreman might not realize the condition of the steps."). Defendants also challenge Sweeney's qualifications to offer any opinion on whether "a tauter rope would have allowed Plaintiff to break his fall," asserting that "any testimony that a tauter rope handle or longer solid handrail would have arrested Plaintiff's fall lies somewhere at the

intersection of human factors and mechanical engineering." Doc. 30 at 19.

Plaintiff objects to Defendants' characterization of any of Sweeney's opinions as "human factors" analysis. Doc. 41 at 9. He asserts, without citing any authority, that Sweeney need not be a "human factors" expert to testify regarding:

> (1) the normal and customary way to disembark a containership; (2) the manner in which worn treads should be observed through following appropriate inspection techniques by ship's officers; (3) the customary way in which a ship's officer should maintain watch and adjustments throughout an operation; (4) the way in which an improperly rigged handrail and handrail lines should be maintained by a ship's crew; (5) the conditions that a vessel should, by the industry custom, consider and anticipate when a gangway is deployed.

*Id.* at 9.[3] Plaintiff states that Sweeney is qualified through her marine training and experience working on vessels and a "class society that inspects these gangways for class certification, and that any of the

---

[3] Although Plaintiff generally characterizes all of Sweeney's opinions as descriptions of industry custom, she goes further than explaining industry customs at points in her testimony. *See generally* docs. 30-1 & 30-5. For example, rather than merely opining on the customary manner in which a handrail should be maintained, as Plaintiff asserts, Sweeney goes on to opine that the lack of a solid handrail "contributed" to Plaintiff's fall, *see* doc. 30-1 at 5. To the extent her opinions represent "human factors" testimony, or testimony in any other field in which Plaintiff has not demonstrated her qualifications, rather than merely opinions representing industry custom, those opinions must be excluded.

qualms regarding Captain Sweeney's testimony go to weight rather than admission." *Id.* at 9-10.

"A 'human factor' is defined as any physical or cognitive property specific to an individual or any behavior specific to humans that may influence the functioning of mechanical and technological systems. Human factor engineering is a subset of ergonomics, based solely on the relationship between the worker and his or her mechanical or technological equipment." *Ergonomics and human factors defined*, U.S. FIRE ADMINISTRATION, https://www.usfa.fema.gov/a-z/health-safety-wellness/ergonomics/ch1-ergonomics-human-factors-defined.html. Courts exclude human factors testimony from unqualified experts. *See Padula v. Carnival Corp.*, 2017 WL 7792714 at *5 (S.D. Fla. Oct. 13, 2017) ("The Court finds that [the expert] is not qualified to offer expert opinions regarding what Plaintiff, or some other reasonable person, would have seen and how they would have reacted to it. These subjects are suitable for an expert in human factors engineering.") (internal citations omitted); *see also Garrity v. Wal-Mart Stores E., Ltd. P'ship*, 288 F.R.D. 395, 399 (W.D. Ky. 2012) (locating proffered expert's testimony

about what contributed to slip and fall at the intersection of human factors and engineering).

Sweeney's testimony regarding what either the Plaintiff or any other longshoreman would have seen or should have noticed is a subject suited for experts in human factors engineering. *Padula*, 2017 WL 7792714 at *5.    Similarly, *Garrity* demonstrates that testimony regarding the cause of a slip and fall lies at the "intersection of human factors and engineering." 288 F.R.D. at 399. Sweeney's expert report indicates no training, experience, or general expertise related to human factors engineering. *See generally* doc. 30-1. To the extent Sweeney seeks to offer an opinion regarding what Plaintiff, or any longshoreman, would have noticed, or how different handrails would have prevented Plaintiff's fall, Plaintiff has not met his burden of demonstrating that she is qualified to do so. Any such testimony is, therefore, **EXCLUDED**.

### iii.   Slip Resistance

Sweeney opines that the switch from one style of tread to another caused a "substantial decrease in grip or friction causing Mr. Brown's foot to slip which resulted in his fall." Doc. 30-1 at 4. Defendants' argument to exclude this opinion mimics their attempt to exclude Crosson on

qualification grounds. They again reason that, because courts have found certified tribometrists and engineers employing quantifiable, mathematical methods to determine slip resistance qualified to do so, all experts testifying about slip resistance *must* have similar qualifications and methodologies. Doc. 30 at 16. Once again, their reasoning is deficient; however, Plaintiff must still establish that Sweeney is qualified to offer this opinion. *See Allison.*, 184 F.3d at 1306. He has not met this burden. Unlike Crosson, who has developed expertise in engineering and metallurgy, Sweeney does not present any particularized basis to opine on the relative slip resistance of marine equipment. *See generally* doc. 30-1. More problematically, Sweeney has shown neither the qualifications nor sound methodology to opine that this difference in slip resistance was the cause of Plaintiff's fall. Therefore, any testimony by Sweeney about the grip or friction of the gangway is **EXCLUDED**.

## B. Helpfulness

Defendants question the helpfulness of two additional opinions of Sweeney: surges in the Port of Savannah and control of the gangway. Doc. 30 at 7, 24.

### i.    Surge in Savannah

Defendants challenge Sweeney's opinion that, because of potential surges in the Port of Savannah, the Vessel should have been even more attentive to the alleged design defects and wear on the gangway.  Doc. 30-1 at 7.  Defendants argue that this opinion should be excluded as unhelpful to a jury.  Doc. 30 at 24.  They contend because no surge actually occurred on the day in question, her opinion that the officer and/or crew should have been more attentive than usual due to additional risks at the Savannah port would merely confuse the jury.  *Id*.  Sweeney does not attempt to "opin[e] about an event that never happened," as Defendants suggest.  *Id*.  Rather, Sweeney's opinion provides further context for the jury to understand how Savannah's particular conditions should have informed the vessel's officers' and crew's performance of their duties and is, therefore, helpful.  Moreover, Sweeney is qualified to offer this opinion.  As a master mariner, she has extensive experience

and knowledge regarding the proper manner in which a vessel's officer and crew should respond to risks in a given port. The request to exclude this opinion is **DENIED**.

### ii.    Control of the Gangway

In her Rebuttal Report, Sweeney opines "[i]t is typical for the entire gangway to customarily remain under the control and watch of the vessel, and gangway watchmen and deck officers are trained to inspect gangways for defects—especially the type of defects I observe with this gangway." Doc. 30-6 at 2. Defendants argue that this opinion touches on the ultimate delegation of duties in this case, doc. 30 at 7, but do not provide a particularized challenge to the opinion. *See generally* docs. 30 & 47. Plaintiff responds by arguing that Sweeney's extensive marine training and expertise render her qualified to offer all her opinions. Doc. 41 at 7-10. *Green*, a closely analogous case under the LWCHA, provides guidance for the disposition of this opinion. 2023 WL 2137117. There, a "marine safety expert" with decades of experience consulting on "port safety" attempted to opine that the gangway at issue remained under the control of the vessel. *Id.* at *17-*18. This Court observed that "the duties a shipowner or charterer owes to longshoremen under the LHCWA" are

governed by *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 163 (1981) and found the expert's opinion regarding the vessel or crew's control of the gangway, and its related obligations relative to the plaintiff, a longshoreman, to be legal conclusions. *Id.* at 18. This Court finds the same today. *See Romano v. John Hancock Life Ins. Co. (USA)*, 2022 WL 1447733, at *1 (S.D. Fla. May 9, 2022) ("It is well settled that experts are not permitted to offer legal conclusions as opinions.") Any testimony from Sweeney about who retained control of the gangway is **EXCLUDED**.

### III.  Marc A. Fazioli

Mr. Fazioli is a marine surveyor and consultant retained by Defendants. Doc. 39 at 1. Fazioli has decades of marine experience, including working as master of two types of vessels and teaching marine safety at Texas A&M University. *Id.* Plaintiff seeks exclusion of the following opinions set forth by Fazioli:

> a. The condition of the Accommodations Ladder was open and obvious to all persons transiting the area and boarding [the vessel]. Doc. 32 at 13 (citing doc. 32-1 at 9).
>
> b. [T]he alleged incident, if it occurred as testified to by Mr. Brown, could have been avoided by the actions and decisions of Mr. Brown alone. Doc. 32 at 13 (citing doc. 32-1 at 15).
>
> c. Gateway Terminals, LLC Stevedores remained in charge of Longshoring operations carried out during [the date of the

incident], including the safe work practices of ILA local 1414
Longshoremen such as Mr. Marlon Brown. Doc. 32 at 11 (citing
doc. 32-1 at 14); *see also id.* at 13.

d. [T]he Gateway Terminals, LLC Stevedores, as well as the ILA
Local 1414 Supervisors, and the individual Longshoremen
themselves, were responsible for monitoring and approving the
arrangements of [the vessel] for safe access. Doc. 32 at 12 (citing
doc. 32-1 at 14.)

e. [T]he Liberian Flag State registry. . . maintains an excellent
safety and construction record, having been awarded Qualship
21 status by the [USCG]. Doc. 32 at 14 (citing doc. 32-1 at 7, n.
2).

f. [I]t is apparent that Mr. Brown descended [the vessel's gangway]
while "jogging" in an uncontrolled manner. Doc. 32 at 12 (citing
doc. 32-1 at 11).

### A. Qualifications

Plaintiff contends that Fazioli is unqualified to offer any of his
opinions, arguing the opinions exceed the scope of his expertise since he
"does not appear to have formalized training or particular experience
with the law." Doc. 32 at 9. Regardless of an expert witness'
qualifications, they are barred from offering legal conclusions. *See
Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir.
1990). This challenge will be discussed in more detail below. Although
Defendants acknowledge this specific challenge to Fazioli's qualifications
to offer legal conclusions, they contend that Plaintiff has not challenged

Fazioli on qualifications grounds.  Doc. 39 at 4, 4 n. 2.  Nonetheless, Defendants recite Fazioli's relevant marine experience to establish his qualifications generally.  *Id*. at 1, 3.  Because Plaintiff has not brought a challenge to Fazioli's qualifications beyond his qualifications to offer legal conclusions, which is discussed in more detail below, and because Defendants have demonstrated that Fazioli's extensive experience and academic training sufficiently qualify him to provide testimony in this case, any request to exclude him based on a lack of qualifications is **DENIED**.  Doc. 32, in part.

## B. Reliability

Plaintiff next challenges the reliability of Fazioli's opinions identified as Opinion (c), Opinion (d), and Opinion (f) above.  Doc. 32 at 9-12.  Plaintiff states that, for Opinion (c), "it is unclear how Fazioli could have reliably arrived at this result." *Id*. at 11.  In response, Defendants refer to Fazioli's Report and its "extensive explanation and background for every conclusion."  Doc. 39 at 6.  As Defendants explain, Fazioli's Report "explains the longshoring industry, some of the rules it operates under, the rules that governed the Vessel at the time of its construction, and additional information." *Id*. (citing doc. 32-1 at 5-10).  In the face of

Plaintiff's vague questioning of the reliability of Opinion (c), Defendants have sufficiently borne their burden of demonstrating its reliability.

Plaintiff also posits that both Fazioli's Opinion (c) and Opinion (d) are "completely at odds with" the Vessel Defendants' Rule 30(b)(6) testimony as well as Fazioli's own deposition testimony.  Doc. 32 at 11-12. The Defendants' Rule 30(b)(6) representative testified he agreed with Plaintiff's counsel's statement that "it's the vessel's policy and practice to have a gangway watchman stationed at the top of the gangway throughout the cargo operation to make sure the gangway stays in a safe condition."  Doc. 32-4 at 33.  During Fazioli's deposition, he stated he "generally" agreed with Plaintiff's counsel that "the deck watch must continuously monitor the shore access for security and safety of an accommodation ladder" and that "[i]t is the ship's responsibility to ensure that a gangway or accommodation ladder is safely rigged and tended while in port."  *See* doc. 32-2 at 86.  While Defendants observe that two people can monitor the same thing at the same time and argue that Fazioli has not contradicted himself whatsoever, doc. 39 at 6, even if Fazioli's statements contain any inconsistencies, this does not undermine his reliability as a witness.  *See Weilbrenner v. Teva Pharms. USA, Inc.*,

696 F. Supp. 2d 1329, 1341 n.17 (M.D. Ga. 2010) ("[S]imply because an expert witness' testimony is contradicted is no cause for disregarding it . . . the fact that an expert witness' testimony is contradictory has never rendered that testimony inadmissible.    To the contrary, such contradictions go solely to the expert's credibility, and are to be assessed by the jury . . . ."). This is, instead, material to be explored on cross-examination.

Plaintiff next argues that Fazioli shows no reliable methodology to support Opinion (f), which describes Plaintiff's movement as uncontrollably "jogging" down the gangway. Doc. 32 at 12. Fazioli's report shows that he reviewed, among other documents and documentation of the accident, the Vessel and Terminal Video Recordings. Doc. 32-1 at 1. In the face of a relatively sparse challenge from Plaintiff, doc. 32 at 12, Defendants have shown Fazioli's methods to be reliable. Fazioli inspected the documented evidence of Plaintiff's fall and the circumstances surrounding the accident and relied on his personal knowledge of the maritime industry's customs to arrive at his opinions. *See* doc. 39 at 8 n. 3. This is sufficient to pass Rule 702's gate.

Plaintiff's request to exclude any of Fazioli's opinions as unreliable is, therefore, **DENIED**.  Doc. 32, in part.

## C. Helpfulness

Plaintiff next argues that Fazioli's Opinion (a) and Opinion (b) represent "bare conclusions" that are "far too speculative and unhelpful," and, together with Opinion (c), categorizes these opinions as legal conclusions that Fazioli is prohibited from providing.  *Id*. at 13-15.  First, Plaintiff is correct that Fazioli may not offer legal conclusions.  *See Montgomery*, 898 F.2d at 1541 (11th Cir. 1990) ("Experts "may not testify to the legal implications of conduct" or "tell the jury what result to reach.").   But "[t]he line between proper expert testimony (facts, inferences to draw therefrom, and the expert's opinion) and improper expert testimony (the actual requirements of the law) is often difficult to draw."  *Cooper v. Pacific Life Ins. Co.*, 2007 WL 430730, at *1 (S.D. Ga. Feb. 6, 2007); *see also Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989) ("[T]he distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive.").   Fazioli "may testify as to the practices normally followed by [longshoremen] regulated by […] laws, but he

cannot purport to instruct the jury on the legal requirements of the statutes and regulations." *Cooper*, 2007 WL 430730, at *2. Any questioning that attempts to elicit an improper legal conclusion from Fazioli may be challenged during trial. However, any request to exclude Fazioli's testimony outright is **DENIED**. Doc. 32, in part.

Plaintiff also argues that Fazioli's Opinions directly contravene prevailing legal authority in this jurisdiction. Doc. 32 at 13-14 (citing *Green v. Cosco Shipping Lines Co. Ltd.*, 697 F. Supp. 3d 1362, 1375 (S.D. Ga., Oct. 6, 2023)). Plaintiff's reliance on *Green* is misplaced. In the cited portion of *Green*, the Court expressly states, after reviewing the evidence specific to that case, that there is a question of fact as to whether the vessel or the longshoremen had active control of the gangway at the time of the accident. *Green*, 697 F. Supp. 3d at 1376. In no place does the Court suggest that, in this jurisdiction, gangways are under the control of the vessel as a matter of law. *See generally id*. Any attempt to exclude Fazioli's opinions based on *Green* fails.

Last, Plaintiff argues that Fazioli's Opinion (e) is irrelevant and akin to inadmissible character evidence that is independently inadmissible under Fed. R. Evid. 403. Doc. 32 at 14. Defendants counter

that, because Plaintiff has placed the condition of the gangway at issue in this case, it is relevant that an independent inspection body certified and passed that gangway barely a month later.  Doc. 39 at 11.  This case involves the condition of the gangway on October 9, 2022, not some time in November of that year.  *See* doc. 1-1.  The gangway could have been in a significantly different condition by the time it was inspected, and Defendants provide no evidence that the gangway was unchanged in the intervening period.  *See generally* doc. 39.  Fazioli's opinion of the inspecting body itself is even more attenuated from the relevant contours of this case than the vessel's weeks-belated inspection.  Fazioli's opinion (e) is irrelevant and is, therefore, **EXCLUDED**.

## Conclusion

Defendants' Motion to Exclude Testimony of Joseph Crosson is **GRANTED**, in part and **DENIED**, in part.  Doc. 29.  Crosson's opinions that "[s]ome degree of paint blistering and rust stains were also evident on the lower section steel step treads—indications of disrepair" and that "[t]he lower five steps of the gangway did not have a handrail on either side of the gangway" are **EXCLUDED**.

36

Defendants' Motion to Exclude Testimony of Katharine Sweeney is **GRANTED**, in part and **DENIED**, in part.  Doc. 30.  Sweeney's opinions critiquing the design or manufacturing of the gangway, opining on what Plaintiff, or any longshoreman, would have noticed, discussing how different handrails would have prevented Plaintiff's fall, discussing the grip or friction of the gangway, or opining who retained control of the gangway are **EXCLUDED** to the extent set forth in this order.

Plaintiff's Motion to Exclude is **GRANTED**, in part and **DENIED**, in part.  Doc. 32.  Defendants' expert Marc Fazioli's opinion (e) is **EXCLUDED**.

**SO ORDERED**, this 14th day of May, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA