# In the United States District Court for the Southern District of Georgia Savannah Division

MARLON J. BROWN,

    Plaintiff,

v.

MSC SHIP MANAGEMENT, LTD., MSC MEDITERRANEAN SHIPPING CO., and MERIDIAN 7 LTD.,

    Defendants.

4:23-CV-182

## ORDER

Before the Court is Defendants' motion for reconsideration. Dkt. No. 75. The motion has been fully briefed and is ripe for review. Dkt. Nos. 75, 81, 83. For the reasons set forth below, the motion is **DENIED**.

### BACKGROUND

The underlying facts of this lawsuit were set forth in the Court's July 1, 2025 Order ("the Order"), dkt. no. 72, and need not be restated in full here. At a high level, this is a vessel negligence case under the Longshore and Harbor Workers' Compensation Act ("the Longshore Act"). 33 U.S.C. § 905(b). The Longshore Act provides a statutory negligence action against the vessel itself and gives longshoremen a right to recover from the

shipowner. <u>Scindia Steam Navigation Co. v. De Los Santos</u>, 451 U.S. 156, 165 (1981). Vessel negligence claims must implicate one of the three duties that the vessel owes to the longshoremen: "(1) the turnover duty, (2) the active control duty, and (3) the duty to intervene." <u>Miller v. Navalmar (U.K.) Ltd.</u>, 685 F. App'x 751, 755 (11th Cir. 2017) (per curiam). These are known as the three <u>Scindia</u> duties, named after the case establishing them. <u>Id.</u>; <u>see also</u> <u>Scindia</u>, 451 U.S. at 172.

On the morning of October 9, 2022, Plaintiff Marlon Brown, a longshoreman, slipped and fell toward the bottom steps of a ship's gangway while it was docked in the Port of Savannah, Georgia. Dkt. No. 1-1 ¶¶ 12, 14, 16. As he fell, Plaintiff's leg twisted, and he tore his quadricep muscle. Dkt. No. 27-3 at 13, 49:7–16. The fall was captured on video from two angles. Dkt. Nos. 27-2, 71. The fall was also witnessed by Plaintiff's colleague, another longshoreman who descended the gangway behind him. Dkt. No. 42-1.

Plaintiff attributed his fall to (1) the lack of traction on the lower stairs of the gangway due to worn treads and (2) the tautness of the rope handline at the end of the metal handrail. <u>See</u> Dkt. No. 42 at 4–5. In the Order granting in part and denying in part Defendants' motion for summary judgment, the Court held that the only duty that was triggered was the turnover duty—that is, the duty to turn over the vessel to the stevedore in a reasonably safe condition and warn of any latent hazards existing

at turnover. See Dkt. No. 72; Howlett v. Birkdale Shipping Co., 512 U.S. 92, 93-94 (1994). The Court held that the record was devoid of evidence concerning the tautness of the rope handline and any other dangerous condition that came into existence after stevedoring operations commenced. Dkt. No. 72 at 29 n.10. Thus, the other two duties were not triggered in this case, nor are they at issue in this Order.

In their motion for reconsideration, Defendants ask this Court to reconsider the portion of the Order addressing the causation element of the alleged breach of the turnover duty. Dkt. No. 75 at 1; Dkt. No. 83 at 1. Specifically, they argue that "[b]ecause Plaintiff has advanced two potential causation theories—and only one of those theories is linked to a condition on which Plaintiff could recover under [the Longshore Act]—a jury would have to impermissibly speculate on causation to render a verdict for Plaintiff." Dkt. No. 75 at 8. Based on this alleged speculation, Defendants urge the Court to grant their motion for reconsideration and enter summary judgment for Defendants on causation grounds. Id.; Dkt. No. 83 at 14.

**LEGAL AUTHORITY**

"The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration." Moon v. Cincinnati Ins. Co., 975 F. Supp. 2d 1326, 1328 (N.D. Ga. 2013), aff'd, 592 F. App'x 757 (11th Cir. 2014). "Nevertheless, such motions are common

3

in practice." Id. Courts often employ the standard for a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) when asked to reconsider a summary judgment order as Defendants request here. See Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997) (Where "the relief sought was the setting aside of the grant of summary judgment [or] denial of the defendant's motion for summary judgment," the motion may be "properly characterized as a Rule 59(e) motion to alter or amend the judgment."); see also Dkt. No. 75 at 2 (relying on the Rule 59(e) standard to bring this motion).

"Although Rule 59(e) does not set forth the grounds for relief, district courts in this Circuit have identified three that merit reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Gold Cross EMS, Inc. v. Children's Hosp. of Ala., 108 F. Supp. 3d 1376, 1379 (S.D. Ga. 2015) (citations omitted). "A movant must 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" Id. (quoting Cover v. Wal-Mart Stores, Inc., 148 F.R.D. 294, 294 (M.D. Fla. 1993)). "An error is not 'clear and obvious' if the legal issues are 'at least arguable.'" Id. at 1380 (first quoting United States v. Battle, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003); then quoting Am. Home

4

Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985)).

"Reconsideration is vested in the district court's sound discretion, and the grant of a motion to reconsider is an 'extraordinary remedy to be employed sparingly.'" Diamond Crystal Brands, Inc. v. Wallace, 563 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008) (quoting Richards v. United States, 67 F. Supp. 2d 1321, 1322 (M.D. Ala. 1999)) (citing Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000); Brogdon v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)). "A motion for reconsideration cannot be used to 'relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009) (quoting Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005)). "This prohibition includes new arguments that were previously available, but not pressed." Id. (internal quotation marks omitted) (quoting Stone v. Wall, 135 F.3d 1438, 1442 (11th Cir. 1998)).

**DISCUSSION**

Defendants challenge the Court's causation ruling, invoking the need to correct clear error or prevent manifest injustice as the reason for reconsideration. Dkt. No. 75 at 2; Dkt. No. 83 at 3-4. Defendants argue that the jury would only be able to speculate

5

about the cause-in-fact of Plaintiff's fall because Plaintiff presents two separate theories as to what caused him to fall—the design of the tread or the wear on the treads themselves. Dkt. No. 75 at 2–3, 8. Defendants further assert that the record is devoid of any non-speculative evidence of Plaintiff's "worn tread" theory of causation; instead, they say "the only evidence in the record is that it was the *design* of the steps that caused the slipperiness." Id. at 7 (emphasis added); see also Dkt. No. 83 at 11–13.

The Longshore Act requires that a plaintiff's injury be "caused by the negligence of a vessel." 33 U.S.C. § 905(b). "[C]ausation requires a plaintiff to show that 'the breach actually and proximately caused the plaintiff's injury.'" Willis v. Royal Caribbean Cruises, LTD, 77 F.4th 1332, 1336–37 (11th Cir. 2023) (internal parentheses omitted) (quoting Yusko v. NCL (Bah.), Ltd., 4 F.4th 1164, 1167–68 (11th Cir. 2021)). The Court must look to the "accepted principles of tort law" to determine whether the causation element is satisfied. Scindia, 451 U.S. at 166; see also Roberts v. Phila. Express Tr. Hapag-Lloyd USA, LLC, No. 24-10957, 2025 WL 671923, at *3 (11th Cir. Mar. 3, 2025) (per curiam) ("To determine causation, we look to general tort law principles." (citing Scindia, 451 U.S. at 166)).

"To prove causation, a plaintiff must establish a cause and effect relationship between the alleged tortious conduct and the

6

injury." Marabella v. NCL (Bah.), Ltd., 437 F. Supp. 3d 1221, 1229 (S.D. Fla. 2020) (alteration adopted) (internal quotation marks and citation omitted). Generally, causation is "left to the fact finder." Burgess v. Royal Caribbean Cruises, Ltd., No. 20-CV-20687, 2023 WL 4483597, at *3 (S.D. Fla. May 16, 2023) (internal quotation marks and citation omitted). "However, the issue may be decided as a matter of law by a court when facts are unequivocal, such as where the evidence supports no more than a single reasonable inference." Id. (alterations adopted) (internal quotation marks and citation omitted).

The Court has studied the record and finds, as a preliminary matter, there is evidence to support Plaintiff's worn tread theory of causation. Dkt. Nos. 27-7, 29-6, 29-7. The scope of Plaintiff's metallurgical expert Mr. Crosson's report "was to determine the general *condition* of the subject gangway with respect to construction and any evident *deterioration*." Dkt. No. 29-6 at 3 (emphasis added). Mr. Crosson reached the opinion that "[t]he treads on the lower five steps of the gangway exhibited a degree of wear which was inconsistent with the level of wear on the upper portion." Id. at 5; see also Dkt. No. 29-7. While he further opined about issues with the design of the gangway, this does not eviscerate the record evidence connecting the wear and tear of the gangway to Plaintiff's fall.

7

Further, the cargo and safety checklist states that the "[t]read is worn on bottom 5 gangway steps." Dkt. No. 29-6 at 7. Another longshoreman, who witnessed the incident, stated that Plaintiff's foot hit the "overly worn treads," causing Plaintiff to fall. Dkt. No. 42-1 ¶¶ 7-8; see also id. ¶¶ 9-10 (explaining that the treads on the lower steps were "far too worn" and "badly worn down," including the tread on which the longshoreman believes Plaintiff slipped). There are also photographs of the allegedly worn tread in the record. See, e.g., Dkt. No. 29-6 at 8-12. Mr. Crosson testified that one can visually observe the worn tread in these photographs—i.e., "there is apparent wear on the crown of the steps." Dkt. No. 27-7 at 8, 28:24-25.

Thus, the question is whether a reasonable jury could infer from this evidence that the worn tread caused the fall or whether the jury would simply be speculating about the connection between this record evidence and the fall. When a plaintiff "identifies two potential causes of her fall" or has "no specific memory of what caused her fall," it does not necessarily follow that the jury must impermissibly speculate about causation. D'Antonio v. Royal Caribbean Cruise Line, Ltd., 785 F. App'x 794, 797-98 (11th Cir. 2019). Indeed, the record before the Court amounts to a triable issue on causation, rather than mere speculation or conjecture about causation, for two reasons.

8

First, like in D'Antonio, Defendants continually try to pin Plaintiff to what they deem to be his "original theory, and what was pled in the complaint,"—that is, that the design of the gangway caused the fall. 785 F. App'x at 797.[1] Even assuming Plaintiff presented this theory at some point, that is not what guides the Court on summary judgment. Instead, the Court must examine Plaintiff's current contentions on summary judgment and whether that theory of causation is supported by facts in the record. Id.; see also Yusko, 4 F.4th at 1170 (At the summary judgment stage, "[a] plaintiff is the master of his or her complaint and may choose to proceed under [any] theory" supported by the complaint.).

So viewed, Plaintiff presently contends that he "experienced a change in the condition of the gangway step tread, and he slipped on badly worn tread on the gangway and fell towards the bottom of the gangway. He tried to grab hold of something to regain his balance, but [Plaintiff] continued to fall, resulting in injuries." Dkt. No. 42 at 1-2. Unlike the "and/or" theories of causation to which Defendant analogizes, the jury would not need to speculate about whether the worn tread "and/or" the loose

---

[1] When viewing the facts in the light most favorable to Plaintiff, the Court notes that it does not read Plaintiff's original theory nor its evolution to the causation theory on summary judgment as a design-defect claim, which, of course, is incognizable under Scindia. See Dkt. No. 1-1 ¶ 16 (characterizing the cause of Plaintiff's fall as "a piece of the handrail at the bottom of the gangway" being "out of place" and "the slip-resistant tread on the gangway steps" being "worn").

handline caused Plaintiff's fall. See Pandya v. Marriott Hotel Servs., Inc., 552 F. Supp. 3d 1364, 1380 (N.D. Ga. 2021). Instead, Plaintiff plainly contends that but-for the worn tread, Plaintiff would not have slipped. In other words, these are not separate, untethered theories of causation that the jury must choose between; this is simply the sequence of the events that Plaintiff, at one point in time, presented. That there was supposedly a second contributing factor—i.e., a loosely rigged handline rope about which the jury will not hear—that caused his injuries to be exacerbated does not abrogate the establishment of factual causation as to the worn tread.[2]

The Order makes clear that the record is devoid of evidence that the handline had become loose and that the vessel's crew had actual or constructive knowledge of it. See Dkt. No. 42. This holding precludes Plaintiff from arguing that the loose handline was a breach of the vessel's duties; but it does not somehow erode the causal link between the worn tread and the fall.

Second, and more dispositively, a plaintiff's "personal inability to identify the cause of her fall is not fatal to her

---

[2] Even if Defendants wish to argue that it was the design of the railing and rope handline combined with the speed at which Plaintiff descended with an object in his hand that caused him to slip, Defendants would be asking the jury to find that there is no duty which the vessel breached, contributing to Plaintiff's fall; thus, there is no need for speculation about causation even if the jury hears of Plaintiff's attempt to steady himself with the rope handline.

claim" where there is other evidence of causation. D'Antonio, 785 F. App'x at 797. Here, the record contains sufficient circumstantial evidence for a reasonable jury to decide whether the worn tread caused Plaintiff's fall regardless of Plaintiff's fuzzy memory. See id. This is a case where the slip and fall was memorialized on video; thus, the record demonstrates that Plaintiff fell at the very end of the metal handrail and the beginning of the rope handline. Dkt. No. 27-2 at 0:05–0:06. The jury may compare this video to the photographs and expert analysis of the worn tread and weigh the facts to decide whether there is a causal link to hold Defendants liable. See Dkt. Nos. 27-7, 29-6, 29-7, 40-3. There is also an eyewitness account of the fall from the longshoreman walking behind Plaintiff. Dkt. No. 42-1. This longshoreman stated that he saw Plaintiff "slip on the fourth step from the bottom." Id. ¶ 7. Specifically, he observed Plaintiff's "foot hit the overly worn treads and it caused him to fall." Id. ¶ 8. This lay witness testimony would allow a reasonable jury to infer where Plaintiff fell and whether that is causally connected to the worn tread about which Plaintiff's expert opines. See Vicente v. United States, No. 3:14-CV-334-J-39JBT, 2015 WL 12684236, at *4 (M.D. Fla. Oct. 15, 2015) (denying summary judgment regarding whether "the poor condition of the stairs and landing caused [the plaintiff] to fall" where there was eyewitness testimony with "probative value regarding the cause of the

11

plaintiff's fall"); Mitchell v. Jones, No. 5:22-CV-60, 2024 WL 1056026, at *2 (S.D. Ga. Mar. 11, 2024) (Courts allow "lay witness testimony about any obvious causal connection between the plaintiff's physical . . . injuries and the underlying [negligence]." (internal quotation marks and citation omitted)).

Plaintiff's expert's opinion that wear did not cause the fall does not change the fact that Plaintiff has put forth sufficient record evidence to the contrary. Defendants argue that Plaintiff presented no "competent evidence" that wear caused the fall, even in light of the eyewitness longshoreman's affidavit. Dkt. No. 83 at 12. In support, Defendants contend that the longshoreman "has no expert credentials or evidence that he investigated the wear on the steps," further claiming that, at best, this testimony "only establishes that Plaintiff slipped on one of the steps that was worn." Id. This, in Defendants' view, is insufficient evidence to surpass summary judgment, especially where Plaintiff's "own expert" stated that the wear likely did not cause Plaintiff's fall and Plaintiff "[l]ikely did not" put his foot on the purportedly worn spot on the steps. Id. at 12-13; see also Dkt. No. 27-7 at 10, 34:23; 12, 45:13-16. However, these arguments do not render summary judgment proper as to causation. Rather, if the record contains contradicting testimony about whether the wear of the tread caused the fall, but Plaintiff has put forth sufficient evidence to support his causation theory, it is the "responsibility

12

of the trier of fact fairly to resolve conflicts in the testimony" and "to weigh the evidence." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Therefore, the jury will not have to speculate about causation. There is record evidence from which a reasonable jury could find that the worn treads, which existed at turnover, factually and proximately caused Plaintiff's injuries.

## CONCLUSION

For these reasons, Defendants' motion for reconsideration, dkt. no. 75, is **DENIED**. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that denial of summary judgment as to causation was not clear error because a reasonable jury could find that the worn treads caused the fall without impermissibly speculating about the handline. The Court's July 1, 2025 Order, dkt. no. 72, remains the Order of the Court. The parties' proposed consolidated pretrial Order is due on or before Friday, April 24, 2026. The pretrial conference will be held on Friday, May 8, 2026, and a jury trial will begin on Tuesday, May 26, 2026, at the federal courthouse in Savannah, Georgia.

**SO ORDERED** this 21st day of January, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA